Mr. Lankham for the petitioner, Ms. Beard for the respondent, Ms. Myers for the intervener. May it please the Court, my name is Al Latham. I represent the University of Southern CA. In the Yeshiva case, our Supreme Court said, and I quote, authority in the typical mature private university is divided between a central administration and one or more collegial bodies. Stated otherwise in the terms that we use in academia, the Yeshiva Court embraced a system of shared governance, shared between administrators and faculty. The Board's test for the managerial status of faculty under the National Labor Relations Act, as first announced in Pacific Lutheran, and then expanded further and made more extreme, frankly, in our USC case, cannot be reconciled with shared governance. And it therefore cannot be reconciled with the United States Supreme Court's decision in Yeshiva. We've pointed this out in many ways in our brief, but there are two that I think are particularly worth flagging here at oral argument. The first is the Board's new requirement that a type of faculty constitute the majority of a faculty committee in order for their service on that committee to count for purposes of managerial status. And the second, which I think reflects a truly fundamental misunderstanding on the part of the Board as to how shared governance works, is the Board's dismissal out of hand of evidence that faculty committees work back and forth with administrators to govern the university. Turning first to the majority requirement. In Pacific Lutheran, the Board said we require that faculty be a majority of a faculty committee in order for their service to count for these purposes. I want to ask you what may be sort of an antecedent question to this. So in Yeshiva and in Pacific Lutheran, the faculty that was seeking recognition was the faculty of the entire university, right? That was the contingent faculty in Lutheran and the regular faculty in Yeshiva. Here, it's only the non-tenured track faculty of Roski. So isn't the question we have to answer, or the Board has to answer, a little narrower than the briefs seem to suggest? Is it the question whether Roski non-tenured faculty, non-tenured track faculty, have effective control of all of these committees that the parties have talked about? Is that the question we have to answer? I don't think so, Your Honor, for a couple of reasons. First of all, the test that is to be applied is the issue that first has to be addressed. And this Court has said many times, if the test, the legal test that is applied by the NLRB is wrong, then the case cannot be... Well, but the NLRB has, the regional director has findings about the non-tenured faculty at Roski. Just forget the question of whether the regional director got it right or not. Just isn't that the question we're supposed to ask here? Because it's only the Roski faculty who are seeking, non-tenured track faculty who are seeking recognition, seeking to join a union. Right? So if, I mean, now there's not much in the record at all about how non-tenured track faculty compare from school to school at USC. It's conceivable, isn't it, that non-tenured track faculty at Roski play a very different role than, say, in other colleges? I just don't know. It's not in there. But why would we look university-wide if the question here is the ability of the Roski non-tenured track faculty to join a union? First of all, Your Honor, the board itself in Pacific Lutheran said that the more important types of power to be exercised are the types of power that are exercised on a university-wide basis. And in that case, the contingent faculty university-wide were seeking recognition. So you would look university-wide at all contingent faculty. I'm not saying you would look at Roski. I'm saying, or what I'm asking is why aren't we asking, do you see my point? Why aren't we asking the narrower question about whether these faculty have effective control of university-wide issues? I think it's important for Your Honor to understand that as the case was litigated below in the regional office, it was litigated on a broader basis because there was also a petition for all of the non-tenured track faculty in the college, the Dornsife College. And then when the regional director ordered elections in both bargaining units, both the Dornsife College, which was many more faculty, and in Roski, when the regional director ordered that election in both, it happened that the faculty in the college voted down the union. So that's technically not before you. Okay, that explains why the regional director speaks a great deal about non-tenured track faculty throughout the university and why your brief and the board's brief do, too. But I told you I was asking you whether or not that's the right focus. I think it is. Because we're always seeking recognition here. I think it is both because in determining whether the Shida standards are met, the board itself in Pacific Lutheran said you have to focus primarily on university-wide exercises of power. And the Roski School faculty have the same opportunities, right, and in fact do participate to a certain extent in university-wide governance. And the important point there is you can't just – According to the RD's regional director's decision, and I don't think you've questioned this, of the 15 university-wide committees that the parties are discussing, non-tenured faculty, non-tenured track faculty, only four of them have someone from Roski, and each of them have only one, right? You don't disagree with that, do you? But Roski, I don't recall the exact number, but it's relatively small, but it's important to understand that if that were the test, by petitioning for a tiny unit, and I think there were only about 20-some people in this unit, you could always have a relatively small percentage of participation in a university-wide faculty committee or the academic senate or any of the other institutions. If you petition just for the French department, let's say, hypothetically, there may be nobody in the French department who happens to sit on these committees, but you couldn't then say that the people who are in the French department are not in fact in the same position as others who do participate. Two follow-ups on that. The first one is who is the employer here? Is it Roski or is it USC? It is USC. It is USC. Second is the way the question was phrased by the presiding judge, he said you have to have control. Is it conceded that they have to have control or that they have participation in the decision-making, which is the right? I know that the board said control, but is that right or should it be to be consistent with Yeshiva and with the traditional models of labor relations law that it would be input rather than necessarily control? Control was expressly found by the Yeshiva court to be incorrect as an interpretation of the act. So Your Honor is correct. It has to be a meaningful participation, which is what shared governance is all about. But granted that, as is said by the board in the brief, I think this is a different model than the traditional original labor union management model of the mill and the mine. Nonetheless, even in the mill and the mine, management, personnel who are management do not necessarily have control over the final decision. The shop foreman in the mill is not making the final decision in anything. He always could be overruled by the plant superintendent. So control has never been necessary to attest to management status, has it? Your Honor is entirely correct, and that's exactly what Yeshiva said. Citing cases from mill and mine, showing that officials such as production managers can be managerial within the meaning of the national labor relations act. My recollection of real world experiences rather than cases I can cite to you is that even shift foreman in, for example, textile mills were treated as management and not part of the bargaining unit. That is my recollection, Your Honor. So, Mr. Latham, does the entire Roski non-tenure track faculty rise or fall together? In other words, is it possible that particular individual non-tenure track employees had more input, meaningful role in employment? Well, first of all, it was not litigated on that basis. It was litigated across the board, all rising and falling together. And, again, because of the emphasis on university-wide exercise of power. Let me say, though, that the Roski non-tenure track faculty did participate. You would not expect them to participate, you know, wildly out of their percentage in the university. But, for example, the union's chief witness, Judge Fine, had been and testified that he had been on the university committee for academic review and had participated as a faculty member in that. And there are others from the Roski school who participate, but it represents only 1% of the faculty, if that. Mr. Latham, the regional director focused on what happened with the recommendations after they came out of the committee, but one of the things that I didn't see, but you know the record better and might be able to point me to, how the issues were given to the committees because it does seem, I think you're right, that university management is a different beast. And one of the questions for me in reading the record is how decisional were the outputs of the various committees or were they, for example, involving people to cross-check decisions that were more or less already in the works or were they kind of, you know, using the faculty committees as, you know, focus groups and information, you know, getting buy-in, and we don't really have evidence on that, do we? Well, you do. You have, for example, the undisputed record evidence that the curriculum committee, except for the School of Medicine, everything has to go through the curriculum committee, and if the curriculum committee does not approve, it does not go into the curriculum. And that brings me to the second point I particularly wanted to highlight today in my oral argument, which is the board's misunderstanding of working back and forth. The board criticized the fact that in setting up a new program in the School of Public Policy, the evidence showed that the faculty committee, which in this case was the curriculum committee, worked back and forth with the School of Public Policy and said, well, we don't know enough about what this back and forth was. The testimony in the record was that it took months of dialogue between the administration and the School of Public Policy before an agreement was made as to, okay, we are going to have a new master's degree in global public policy. That is the essence of shared governance, and I think it illustrates how the board fails to understand how shared governance works. I'm sorry. I actually think you've raised some pretty serious questions here about what the board has done, but I want to ask you just about one issue here. You say the board has adopted a higher standard of control than the court approved in Yeshiva. Yeshiva says faculty over university-wide policy must be pervasive, right? That's the word Yeshiva uses, pervasive. With respect to academic matters. Right. So how is that different from what the board standard is, which is that the recommendations of the committee must almost always be followed? Well, the board didn't stop there. They said it must almost always be followed, and there must be no independent review, and when we demonstrated in case after case, as Member Miskimara's dissent points out, that a particular faculty committee's decisions were adopted without independent review. Can I just go back to my question? I still want to know how pervasive is different from almost always or without meaningful review. That's my only question. It seems to me that if a committee's recommendations are almost always followed, or, and I want to ask the board about this, the board seems to think this is just one standard, but I'm not convinced, but let's assume it's two, if the committee's recommendations are almost always approved, or if they're approved without meaningful review, isn't that pervasive control? Well, I think that would be pervasive. Right, that's my point. But, I'm sorry. There may be a lot of problems with what the board has done here, but I guess I'm not sure why they've imposed a higher standard than you should have. If that were, you used a disjunctive, or that would be pervasive. The other issue to focus on is what topics are we talking about here? If we're talking about academic topics, that's one thing, and one of the things the board did was move finances into the primary category of topics, which it's never been in colleges and universities, and the board admitted in its brief it's actually trying to affect what kind of authority is given to faculty by adding finances to that primary, the list of primary areas. But one final thing, Your Honor, the yeshiva court was careful to say, even in the areas that faculty did control in yeshiva, such as academics, that it is always subject to oversight, to review, and occasional vetoes. Thank you, Your Honor. Good morning. I'm Heather Beard for the board. The board's test to determine whether faculty are managerial and therefore excluded from the act's coverage is rational and consistent with the act, comports with yeshiva, and follows this court's instruction to provide greater clarity in the area. Ms. Beard, how do you respond to Mr. Latham's point that under the board's approach, they can slice and dice the unit and make it so that nobody ever has managerial authority? Okay. I have two responses to that. My first response is that the test that the regional director was looking to when first considering the petition for unit, as Judge Tatel was talking about, is the common one that the board applies when looking to see what the composition should be and the community of interest in the unit. The RD went a bit further here to also take a look at sort of the furthest common shared grouping, which would be with the Roski School faculty, the other non-tenure track faculty in the school, and rationally concluded that the terms and conditions of employment of the petition for unit, the Roski School folks, as well as those others across the university as a whole, non-tenure track, over 75% of the university, and looking at those two together, the board found that the unit here that's petitioned for here did not align with management sufficiently enough to be excluded from coverage under the act. So in terms of the board... Is it possible that at a university, a particular category of faculty, well, let's just stick with what we've got here, non-tenure track faculty, could be considered management in some schools at a university and not in others, depending upon how they operate? That's correct, yes. So the only question the board has decided here, right, is that non-tenure track faculty at Roski, right, are not management. Correct. In the petition for unit are not managerial, and looking to whether or not they... And the reason why you say that the regional director and the board and everybody else looks beyond Roski is just to sort of flesh out how non-tenure track faculty are treated elsewhere, right? Yes, indeed. But the question is still Roski. Yes, the question is about the petition for unit, and the board even in the Pacific Lutheran... Let me ask you something about the application of that. Would you agree and would the board agree that the faculty senate is exercising a managerial role, or are you saying that's not management because its decisions are not final? That whether the academic senate as a whole is exercising managerial? Yes. There was some evidence that over the issue, for example, a secondary issue of academic policy, the academic senate in its main committees was exercising by virtue of the decisions that were made, but not the non-tenure track faculty, which is the relevant grouping. All right. So the answer to my question would have been yes. You could have said that and stopped there. Yes, it is management. It is management. Is that correct? I don't think the answer respectfully to your question is a yes. I don't know that the record demonstrates the academic senate in all of what it does in every area and whether or not the board would find that... A shop foreman doesn't spend all his time on management. He occasionally gets to pick up a hammer in a lot of shops. Absolutely. Are you saying you have to spend all your time on management to be management? No, that's not what the board is saying. Okay, good. Get that out of the way. That said, then, the faculty senate does have a role in management, does it not? The faculty senate in this particular instance... Yes, this particular instance. The only evidence in the record about what they had been doing was the handbook committee. There was evidence in the record specifically about the handbook committee, and adopting policies of the faculty handbook, if there was enough evidence in this case to look at, could possibly be one of the secondary areas for management. So you would stand here and say that the faculty senate is not a managerial body, or is a managerial body, if you have to say, because you do have to say. Is it a managerial body or not? On this record, Your Honor, I do not know that I can say here that that body itself is a managerial body. A factual question, then. Is it not the case that the record reflects that a non-tenured track professor served as president of the faculty senate at one time? Yes. I don't know whether he was Roski or not, but if he was eligible and was not Roski, the Roski non-tenured also would have been eligible, right? Can you repeat that last part? If he was from Roski. I don't know whether he was Roski or not. I don't remember. Was he Roski? I think there was a Roski non-tenured. Okay, thank you. I just won't go any further with that, then. Thank you. Okay. So I just want to get the Board's position straight, and I recognize this is complex. If the employer is the university, but the unit is Roski, I take it it's the Board's position that some non-tenured track Roski faculty might be managerial and some not? That could be. In this particular instance, none of them. It wasn't proved that any of them were, but in a theoretical way, or I'm just saying your position is it wasn't proved. And the Board would not include a manager in a unit that was otherwise non-managerial, even if there was a one or two Roski folks that they proved. So if there was somebody, and what is your view of how the Board analyzes the question whether one or two or five non-tenured track faculty members' participation in a committee gives them managerial power? That would be they would have to be one of a block of similarly situated participants in that committee in order for decisional power to redound to them. I would agree with that. And is the similar situation that they be non-tenured track or that they be Roski or both? Here, I think the answer is that they would be both, given the fact that there was so much discussion by the RD of that grouping of non-tenured track faculty being relevant to those non-tenured track folks at Roski. And, in fact, the test in Pacific Lutheran specifically talks about looking to the structure of the administration as well as the structure of the faculty. Why would it be both? If there were somebody on the non-tenured track Roski faculty who was ex-officio made provost, the fact that that person was acting for the university and, well, maybe that's over-determined, it just seems like somebody could be managerial and in a way that doesn't also affect the other Roski people and still have to be excluded. That's true. There could be someone in a different way, not even from service on a committee, in terms of, as you said, becoming a dean or a provost, and they could be excluded. And in terms of your first question, Judge Pillard, about sort of mischief-making in terms of But there's, first of all, no such evidence here in that it is not necessarily mischievous for a union to determine what is an appropriate unit of employees who share terms and conditions of employment. And in this instance, those teachers, faculty non-tenured track in the Roski school who are not serving in not only a majority of the committees but the very important what is the type of control that they must have in order to recommend. And that goes all the way back to yeshiva, footnote 17 of yeshiva, which says that there needs to be effective recommendation. And that's what this case carries forward from yeshiva, taking yeshiva's suggestion that yeshiva is only a starting point and taking yeshiva's suggestion that it could be that there is a line drawn, rationally, between non-tenured track and tenured faculty. And looking to that as guidance, what the board did was rationally come up with a test that here the employer simply did not meet. I want to ask you about two of the arguments that USC makes. One is about the board's definition of effective control. It says they're effective if they're almost always followed and routinely become operative. The board's view is that's an and, correct? Yes. It has to be both. Correct. Can you explain why? Sure. I mean, if, well, let me just ask you a question. If the committee's recommendations are almost always followed, what difference does it make whether the extent of board of administration review, isn't that, quote, effective, close quote, control? No, I think that they're separate, and here's why. If a committee recommendation is almost always followed, that doesn't necessarily mean that the committee effectively made a recommendation. For example, the folks who are reviewing the committee's recommendation may, for completely different reasons, decide that they're going to adopt it or maybe did not do the kind of level of review that we would, you know, that they're alleging that they did here. And, therefore, if a committee recommendation is followed, it doesn't necessarily follow that it's because there was effective recommendation made by that committee, and we make that point in our brief. So they are, indeed, this court has actually the, you know, independent review prong of this test, is similar to the one this court in the decision in Allied that we cite in our brief has upheld in a case involving whether or not employees are supervisors. And so that particular prong of effective recommendation, not necessarily just something being always followed, is something that is a test that is rational in order to determine the very important question of whether employees are going to be excluded from the act. Thanks. Well, all right. Well, let me ask you my second question. And it's about your majority, the board's majority control requirement. Suppose you had a committee that was 55% tenured and 45% non-tenured. Try it. And suppose further that the recommendations of that committee are unanimous, that it's a committee that really works well together, and that it meets both parts of your test. That is, they almost always become effective. Well, they always become effective, and there's no effective administration review at all. So it meets both your standards. Why wouldn't the non-tenure track people be considered effectively controlling those decisions? Well, in that instance, because of the majority requirement. You can't answer my question by saying it's not a majority. I'm asking you to defend the majority requirement with this hypothetical. And you notice it meets both tests. But as briefly the American Council of Education points out, collegiality at the university level is really important, collegiality between administrators and faculty. And so here you have, in my hypothetical, a committee that's functioning the way you want them to. It's collegial. It's working well together. It's obviously working well with the administration. True. The non-tenured faculty, in my example, don't have control. But don't they have effective control? Right. Why would they not be considered aligned with management? Maybe I should put it that way. Why isn't... They seem to be aligned with management. Because that's the standard, right? The standard is whether or not they are aligned with management, such that they do have the effective recommendation and control. So to answer your question, to defend the majority standard, first I would say that is a rational way to determine whether or not there is effective recommendation in the context of there needing to be an actual role that there is by that grouping. What I'm worried about, the reason I ask the question is, yes, at face value, I see what you're saying. How could someone have effective control if they're a minority, right? But these are universities, and the management structure of the university is complex. And my question comes from a concern that perhaps these rules, which might well work outside the university context, are too rigid to respond to what's really going on in a university. That's my question. And I think this... I would respond, Your Honor, by saying I think Pacific Lutheran took into universities, as Yeshiva taught, and this absolutely did. I know it said it did. My question is, did it do it sufficiently? Yes. And the Board's position is that the Board absolutely did that. Recognizing collegiality and the way that committees can exercise collective authority, which is something that's taught by Yeshiva, is not a reason for there to be no effective recommendation. But in determining the effectiveness of that collective authority, one rational way to determine it is having the relevant grouping of the faculty, that line being drawn and taking a look to see that numerical majority. Now that, again, is not here the end of the matter. I mean, we... In fact, it's only an alternative ground, isn't it? In each instance, the regional director does not rely on the lack of a majority non-tenure track, but says, even if I thought that there was managerial control being exercised here, I still wouldn't find that the non-tenure track faculty were exercising that because they were in the minority. That is correct. Is that right? I mean, just... I'd like your independent view that that's an alternative ground, even if. The way that it's written in the regional director's decision is that correct, yes. That even if, after all of the analysis is said and done of the areas and recommendation, that that particular factor, which is something that is a significant and relevant factor, that would mean that on almost every single committee, there's not a majority of non-tenure track faculty at Roski. No. But just to follow up with Judge Pilgrim's question, I mean, her point, I think, is that to prevail in this case, just on this particular regional director decision, you don't have to defend the majority rule requirement because it wasn't critical to her opinion, right?  My understanding, though, is that the employer is challenging the test itself. But given the way the RD decided the case, is the test relevant? Yes, it is relevant because it is part of her decision. Yes, it is relevant. One more question. Suppose you have a committee that, say, it's pretty carefully balanced. Take my 54-45 committee. And for a year or two, it's 55-45 in favor of tenured. But then sometimes it switches because of the selection process. So it goes back and forth over the years. Sometimes it's majority control for non-tenured, sometimes it's not. What will we do with that committee? Right. Well, we would take a look at the committee and its composition at the time that the unit is petitioned for and that the board would have a hearing. So then could, if three years later, so if it's 45% when the union is certified, but three years later it's 55, could the employer move to decertify the union because it's now management? The employer could file a unit clarification petition and say that at that particular time that it is filing the petition, the unit is no longer an appropriate unit for just those reasons that you. And what difference does it make whether they're elected or not? That was one of the factors that was considered because in earlier cases, the fact as to whether or not they're elected means sort of more towards the notion of being a collegial sort of representative of the employees being elected rather than having no information. In this instance, many of the Roski non-tenured track faculty had no idea how they could become members of any of these committees. And so it's just one factor demonstrating the representative capacity. I just have one last question. So the board in its decision in Yeshiva, I'm sorry, in Pacific Lutheran, and you in your brief here and a couple of the amicus briefs, you emphasize how universities have changed since the court decided Yeshiva. There's far more, the percentage of administrators is far higher, the percentage of non-tenured track is far higher. You say universities are run much more like corporations. Do you think that Yeshiva would come out differently today? Yeshiva might. It's hard to know without knowing the exact intricacies of the record in Yeshiva, but I do think because Yeshiva itself said that it was the starting point and that the principles that the board has explicated in Pacific Lutheran and here in USC have come into fruition, that in applying them to the unit of faculty in Yeshiva, I guess there we wouldn't have the issue of tenure versus non-tenure because most of the faculty there overall was tenure. So with that factor being quite different, I don't know that I know if it would or wouldn't come out differently under this test. But what I do know is that this test takes Yeshiva as its starting point and honors it without going too far to contradict Yeshiva. So I have a question, and I know that it's the employer's burden, and so in some way they structure what the record is. But I have the same question for you that I had for Mr. Latham, which is doesn't it also matter quite a bit what the nature of the remit is for a particular committee or a sensible governance body? In my experience is that often a committee, even if it has a fancy name, is given an issue that's somewhat cooked. So the board asks whether there's investigation or independent investigation or analysis after the committee works. But to me it seems like maybe it's as important is what's the analysis and what's the nature of the remit before the committee gets the task to say, hey, should we use these new dorms to double the size of our student body or to give more of our current students a space? What information is provided, what is expected to come out of that? Absolutely agree, Your Honor. And I think that that is in the test when you talk. You do? Where do you think that's in the test? Well, if I start with Yeshiva, where Yeshiva says there needs to be discretion that is exercised within or independent of the administration. And you cannot exercise and have a recommendation that is a discretionary one if it is of a routine matter in which the individual is not exercising discretion. And that is what our point was in our brief about the curriculum committee, which everyone agrees a majority of the work is done in the subcommittees. And the subcommittees, what they get, I think that's what you mean by the remit, sort of the input into the committee, is in the record sort of almost a checklist of what would this course need to do in order to meet the requirements to be in our course curriculum. And so absolutely if what's put into the committee is something that isn't something over which folks can be said to be using discretion, then that initial input, we don't have the effective recommendation. And I believe if that answers your question, Judge Pillar, that is important, and that is seen not just in the test but also is played out in this record. And I'm happy to answer more questions. I know my intervener wants to. Thank you. We'll hear from the intervener. Intervener. Thank you, Your Honor. Counsel, intervener. Intervener. I'm sorry. I apologize, Your Honor. I didn't hear you. Good morning, Your Honors. My name is Maria Myers, and I am counsel for the intervener, the Service Employees International Union Local 721. The Roski faculty are not managers. Their employment relationship with USC and their limited role in shared government make that clear. For my time, I wanted to highlight and take a closer look at what shared governance looks like at the school level so that we could take a closer look at whether non-tenure-track faculty actually exercise managerial decision-making of the type that's discussed in Yeshiva. Is that what's important at the school level? You mean Roski? I think it is important. Although Pacific Lutheran and Yeshiva guide us to look at committees that are at the university level, the record does reflect that much of the kind of really important, meaty decision-making occurs at the school level, and there are shared governance structures at the school level. I think it would be a mistake for us to completely avoid that question and only look at the university-wide committees. As far as looking at whether an employee is or is not aligned with management, don't we have to look at the whole employer, not just bargaining it? By that, Your Honor, do you mean the entire employer, including tenure faculty? No, you're not litigating. The Board is not litigating against Roski. They're litigating against the employer, like is the norm in labor relations. I agree, Your Honor. Don't we have to look at the role of the putative employee in relation to the employer, which would be USC, not Roski? I think, Your Honor, here that we have to look at both. I agree that USC is the employer, and it's important for us to look at shared governance that is on the university-wide level. But I do think that to the extent that we're looking and trying to perform an analysis of whether or not the faculty in the petition for unit are exercising managerial authority such that they ought to be stripped of the protections of the act, it would be a mistake to totally overlook what occurs at that school level. It's a curious position for you to be taking. In essence, I take the suggestion, and you may well be right, that managerial authority or managerial control, whether at the Roski level or at the university level, could disqualify an employee from participating in the bargaining unit because either level of management could align the employee with the employer. I think, Your Honor, that unlike maybe if in labor relations, I think we're accustomed to looking at kind of more of a supervisory status question where we look at the actual individual employee, and we try to understand what is your role within this organization. Here, when we look at higher education, authority is collective, and so we have to look at governance structures. And I think that Pacific Lutheran and both Yeshiva guide us that we must look at them at both levels, the university level, the committees that cover everyone, but also the school level. And I think here it would be a mistake to skip over that part of the record because there's a lot of evidence here that at that school level, the decision-making by faculty, both tenured and non-tenured track, is routinely ignored or overruled by the administrators there. There is approximately the entire faculty of Roski, including non-tenured track and tenured faculty. There are 40 faculty members. There are 10 administrators. There's a dean, and then below that dean, there are nine different associate deans, assistant deans, vice deans. And the record contains a lot of evidence about even critical issues about curriculum, finance, admissions, where Roski faculty, both tenured and non-tenured track, made recommendations, and those recommendations were completely ignored or overruled by the administration. I think the best example of that had to do with a decision that the dean made about changing the way that teaching assistantships are awarded to graduate students who are studying for their Master of Fine Arts degree. That may not sound like a very big deal as we review it, but teaching assistantships are important because they come with a stipend and tuition forgiveness for those students. So the university uses that as a way to recruit people to attend Roski, and the dean had an idea that she wished to change the way those TA-ships were awarded. The faculty council voted against that, and she said that she would proceed with that change nonetheless. The faculty council actually wrote a letter to the dean saying that they strongly disagreed and asking her to please reconsider. She did not do that, and she instead moved forward and implemented that change. As a result, the entire rising second-year MFA class from Roski resigned en masse, and the record has testimony from tenured faculty that the reputation of the program was destroyed and that they fell significantly in the rankings as a result of this. I think that decision and the fact that the faculty had so strenuously opposed it and that the dean nonetheless went forward with it really cuts against the finding that faculty are managerial. Is there evidence that even tenured faculty are not managers? I don't know that the record contains enough evidence to show that, but I would say there's a strong argument, I think, at Roski that the tenured faculty are not managers. However, those are not in our petition for a unit, so we don't need to reach that. As I hear your – I know you defend the board's – the Pacific Lutheran's majority requirement and its definition of effective control and the division of the five areas they look at, but as I hear your argument, for you to prevail here, do we have to even decide any of those questions? I mean, you seem to be saying under any standard, just simply applying yeshiva, there's no evidence of effective control by the Roski non-tenured track faculty. In fact, they're not even participating at all, essentially, in management. Isn't that your position? I agree, Judge Tatel, that even under yeshiva, even if Pacific Lutheran had never been decided, I think that these folks are not managers. I mean, under your view, even if the majority rule requirement were invalid, it wouldn't affect your argument, right? I don't think it would because the majority rule, I view, is kind of an ancillary to it. And even if the board was misinterpreting its virtually or almost always no effective management, even if that was wrong, it wouldn't affect your position, right? Nor would it affect your position if the board had put finances in the wrong category, correct? I want to be clear that the union's position is that we do support the test articulation. I know you do, but I'm asking whether any of that's relevant in this particular case on these facts. I think upon these facts, you're correct. I do not know that the test actually matters because even under yeshiva, I agree, I think faculty here are not managers. Do you think non-tenure-track faculty can ever be considered management? Yes. You do. Do you think there's a difference between part-time and full-time? There are important factual distinctions. Part-time faculty at USC do not receive benefits. If they teach less than half-time, they are predominantly on semester-by-semester contracts. They are not permitted by the rules of the Obrosky Faculty Council to hold an office on the council or even to vote in elections. So there are some important distinctions. Is there any evidence in the record? I mean, I didn't find any, but maybe you know. Is there any evidence in the record about how non-tenure-track faculty function in other schools at USC? Your Honor, we, I believe, offered evidence from only the two schools. Actually, I'm sorry, the three schools that were petitioned for at that time. I do not believe that the record was developed about non-tenure-track faculty at other schools. Okay. Thank you. Thank you, Your Honor. Can I still have any time left? Okay. Mr. Latham, you're out of time, but you can take three minutes. Thank you, Your Honor. First of all, I want to flag what I thought was an absolutely stunning position that the Board took in response to one of Judge Pilar's questions. She said that the majority of a committee would have to be not only faculty, not only non-tenure-track, but if I heard her correctly, would also have to be from the Roski School in order for the service to count. I cannot emphasize enough how radical a position that is. When we're talking about the majority standard, we are not talking about an ancillary position or an alternative position. We're talking about a presumption, a presumption that the Board first laid down in Pacific Lutheran, then extended in the USC case to all non-tenure-track faculty, which means that their service simply will not count. And I respectfully disagree with counsel on the notion that this presumption was merely an alternative argument or a factor to be weighed. The text of the Regional Director's decision, as affirmed in full by the Board, is very clear. That service does not count, and it flies directly in the face of Yeshiva's teaching when it condemned, quote, the Board's view that the managerial status of particular faculties may be decided of conclusory rationales rather than examination of the facts of each case. So the difficulty is it may be the case that one person from a bargaining unit has a very powerful role, the decisive role, the swing vote on an important committee and effectively exercises that authority. But at the same time, it may also be the case that the person is, let's say, a student not elected by the student body, chosen kind of on the fly by a professor to be eyes and ears for an important constituency and really has zero managerial authority. So what is your understanding of how the Board should determine the role of any individual bargaining unit member in collective governance? What's enough? I think it should look at whether there is, as the Yeshiva court said, a mature relationship where there is shared governance. And the evidence in this case of shared governance is overwhelming in that the key areas, such as academic control, are entirely in the faculty's hands. So, for example... But what's the role of Roski non-tenured faculty in any of that? The opportunity committee just may well be effective control. But what's your best argument for the proposition that... I give you the argument about the majority requirement. You can tell from my questions that I have doubts about that. But what's your best argument that even assuming that some of these committees are more effective than the RD might have said, given that the representation of Roski non-tenured track faculty is either non-existent or one, how do you make the argument that they have effective control? As non-tenured track faculty, under the shared governance system that USC has, they have the same opportunity as anyone in any other school to become the president of the academic senate, to be on the academic senate, to be on any of these committees. But the question is not whether there's potential for control, but whether they in fact have it. Or do you think that that is also an example where the board in Pacific Lutheran has misinterpreted Yeshiva? If you were to say that members of the unit, in order to be managerial, had to actually sit on these committees... No, no, not members. I'm talking about the unit here. This is non-tenured faculty. You have to look at how the university welcomes non-tenured track faculty university-wide into shared governance. Even if you look university-wide, where's the evidence that non-tenured track faculty have effective control of anything? One of them was cited by Judge Santel, the fact that we had a non-tenured track faculty member who in the relevant year was the president of the academic senate. It was Roski, and it was the year when the hearing... It was. It was the year of the petition. The president was non-tenured track. Does that mean that the Roski non-tenured track faculty have control? It may be that one member was playing an effective role in the committee, but is that the same as the faculty? Because of their status as university faculty, in a system of shared governance as it is maintained at USC, they can choose to participate or not participate, and some did participate in university-wide faculty governance. I have to say also that if you were to say that a faculty member who had the opportunity to participate in shared governance chose not to, if you were to say that that person, by virtue of not choosing to participate in shared governance, is an employee within the meaning of the act, is not managerial, then I think that is contrary to Yeshiva itself because nobody in the whole course of the Yeshiva case, from the board on, got down to the granular level of, okay, Professor Jones versus Professor Smith. It was given the system that Yeshiva had, what kind of power did the faculty exercise? So it is here. Given the system that USC has, the faculty, absolutely including non-tenure-track faculty, exercise shared governance. In the case, for example, of the academic senate, the evidence is that there has never been a case where the academic senate wanted something in the faculty handbook and it didn't go in. The regional director cited a single instance, just one, where something was sent back to the president for rewording, and therefore the regional director said, well, that shows that the authority is not there to effectively recommend. I would submit that shows that the regional director, affirmed by the board, was expecting ultimate authority in order to call them managerial. One quick point, if I may, Your Honor. So you're, just to be clear, and I think this is your position, that it's the group rises or falls, non-tenure-track faculty, based on whether they've been shown to have the opportunity to participate in collective decision-making, and the active and authoritative participation of some non-tenure-track faculty suggests to you that, and you think should have been basis for the board to find that they do. Yes. That is a system of shared governance. As Your Honor knows from your experience at Georgetown Law, not everybody chooses to participate, but it doesn't make those who choose not to participate employees rather than managers within the meaning of the act. And let me just say one more thing, if I may. I think it's critical that this court address the legal standards that the board set down, including but not limited to the majority standard, because if there's a failure to apply the proper legal standard, as this court said in titanium metals versus NLRB, then the case, the board's order cannot survive review. They have to have the right legal standard first before you know how the facts apply to that legal standard. You know, Ian, I just have a question that occurred to me while you were talking about potential. Am I right? Didn't the court in Yeshiva say, didn't it think it was significant that Yeshiva faculty were required to participate on committees? Am I right about that? I don't recall that the court emphasized any requirement. I don't recall that. I will say, since Your Honor mentioned it. That's not true here, right? USC doesn't require non-tenure-track faculty to participate. Actually, full-time. It can, but it's not required, right? Actually, full-time non-tenure-track faculty are required to have a service component that they serve in some way. That may not mean that they serve on a faculty committee that engages in shared governance. Is that different from tenured faculty? No, that part is not different. So both tenured and non-tenure-track have a service component? If you're full-time, non-tenure-track. And do we know the proportion of the bargaining unit that are full-time versus part-time? I don't recall off the top of my head. I think the majority of them are full-time, as I recall. Where do we know what you just told me about? I don't doubt you, but where do I find this in the record about how USC treats tenured versus non-tenure-track faculty regarding their obligations or opportunities to serve on committees? Your Honor, I can't, unfortunately, give you a citation. I recall that Vice Provost Martin Levine testified. He was our first witness. He testified at great length about how shared governance works at USC, and he may have mentioned as part of that testimony the service component. But to be clear, nobody is actually required to sit on a particular committee. At the university-wide level, you decide whether you want to self-nominate yourself or, in some cases, the academic senate will reach out and ask you to serve. Now, this comes back to a question that I probably should immediately come to the answer to, but I've sort of lost it. When you say that they applied the wrong standard, if we're writing an opinion, what do we say the right standard is that they departed from? Well, they're departing from yeshiva in multiple ways. The majority— If you're going to type me a case, tell me what the standard is. I'm asking you the standard that you would say we can say they didn't achieve. Your Honor, I would have to say that you would remand to ask the board to try again, but within that context. Within that context. Within that context. You made the statement just a few sentences ago that we should say they had not applied the right standard. Right. Now, this implies that there is a right standard. What would you say that standard is that they departed from? Within that context, Your Honor, I would say, first of all, that they should abandon the requirement that they stated of majority status as a presumption. I would say that they should not require both that the recommendations of a faculty committee be almost always followed and that there be no independent review. I would suggest that the five-part organization of factors is contrary to the statute in that they have moved finances into one of the three primary factors and that they have failed to include academic policy as one of the primary factors but have instead treated academic policy as a secondary factor. I think that would be a good start, Your Honor, in terms of giving guidance to the board. Okay. That was very helpful. Let me just ask once more. So, let's assume you're right on all of those. How would that make a difference in this case? I'm sorry. How would it make a difference in this case? Suppose you're right on all three of those. I think it would show that the non-tenure-track faculty, including those at Rusty, are managerial employees within the meaning of the act for the reasons I said. They all participate or choose or have every opportunity to participate in shared governance, which makes them managers within the meaning of yeshiva. I see. And where in yeshiva do you find the proposition that the question is not whether the faculty is actually participating but their opportunity to do so? Your Honor, all I can say about that is yeshiva addressed broad questions of what powers faculty as a group have at yeshiva university and did not ever say each individual has to be shown to have managerial authority based on what they choose to do or don't choose to do. Yeshiva spoke in terms of the powers of the faculty as a group. And in fact, remember, one of the things that yeshiva court specifically rejected the board's position on was the board's rejection of the notion that authority, managerial authority, can be exercised collectively. Prior to yeshiva, the board had been saying we don't pay attention to collective authority. It's got to be individual exercise of authority. And one of the things that the yeshiva court did say, and I think this actually is responsive to Your Honor's question, is that the collective authority is managerial authority. And the specific position of the board was deemed insupportable on that one point in yeshiva. All right. Thank you very much.
judges: Tatel, Pillard, Sentelle